UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

EVAN BITZER,

        Plaintiff,

  v.                                                     Case No. 11-C-0859

MICHAEL WILLIAM ASHBECK,
in his individual capacity, and
TOWN OF WABENO,

        Defendants.

---

**DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

---

Plaintiff Evan Bitzer filed this civil rights action under 42 U.S.C. § 1983, alleging that, Town of Wabeno Chief of Police Michael Ashbeck violated his Fourth Amendment rights when Ashbeck unlawfully detained him following a traffic stop. The parties have filed cross motions for summary judgment. Plaintiff contends that partial summary judgment should be granted in his favor as to liability. Defendants contend that summary judgment in their favor is appropriate because Ashbeck's conduct did not violate plaintiff's rights as a matter of law and because Ashbeck is entitled to qualified immunity. For the reasons that follow, Defendants' motion will be granted.

**BACKGROUND**

On the afternoon of July 25, 2010, Plaintiff Evan Bitzer was driving in Forest County, Wisconsin, when he was pulled over by Defendant Michael Ashbeck for speeding. Ashbeck, who

is Chief of Police for the Town of Waubeno, was in a fully marked "K-9 Unit" patrol vehicle, and was accompanied by his police canine, Dutch. Ashbeck is part of the North-central Drug Enforcement Group (NORDEG), through which he receives yearly drug enforcement training and participates in inter-agency drug investigations. Dutch is classified in narcotics, article search, tracking, and officer protection, and regularly accompanies Ashbeck on his daily duties.

According to Ashbeck, before approaching Bitzer's vehicle, he ran the vehicle's license plate, which took approximately one to two minutes. While he was running the license, he observed "assertive movement" within the vehicle. Ashbeck alleges that Bitzer and his passenger, Ryan Krahn, appeared to have both turned around and were reaching into the back seat area. As Ashbeck first approached the vehicle, he observed that it was packed with a variety of items, such as tools and household goods, and it looked like someone was moving. Ashbeck alleges that during the course of the traffic stop, he asked Bitzer and Krahn a series of routine questions and noticed several odd behaviors. Ashbeck contends that based on his experience and training, Bitzer seemed more nervous and fidgety than a typical person stopped for speeding, and he had to look in several places to produce his license and proof of insurance. He also alleges that Krahn stared straight ahead and only looked at Ashbeck out of the corner of his eye as he talked to Bitzer. In addition, Ashbeck alleges that when he asked Bitzer where he was coming from, Bitzer responded, "Wisconsin." When Ashbeck asked, "Well, I know you are in Wisconsin. Where were you coming from?" Bitzer again responded, "Wisconsin."

Bitzer's version of these events is somewhat different. Bitzer alleges he was not nervous, that it only took him about five seconds to locate his driver's license, and that he and Krahn were never moving around or going into the back seat of the vehicle. Krahn testified at his deposition that he was not acting unusually, and rather than staring straight ahead, he was looking at Ashbeck

and around the car. Bitzer also alleges that the vehicle was loaded with luggage and camping gear, as he and Krahn were returning from a camping and mushroom hunting trip. He alleges that the condition of the vehicle would not have lead an officer to suspect that there were drugs in the car. Bitzer further alleges that he did not answer "Wisconsin" when asked where he was coming from. Bitzer further contends that none of these details were included in the routine incident report Ashbeck completed.

The remaining facts are largely undisputed. After his interchange with Bitzer, Ashbeck then returned to his squad car for approximately five minutes while Bitzer and Krahn remained in Bitzer's vehicle. During that time, Ashbeck checked Bitzer's record on the squad computer, which revealed that Bitzer had prior drug convictions, including a conviction for operating while intoxicated in 2002, and an arrest for possession of THC or marijuana in 2008. According to Ashbeck, at that point, based on Bitzer's nervousness, asserted movement within the vehicle, vague answers to questions, the packed vehicle, and the prior drug charges, he radioed to dispatch to let them know he would be issuing a speeding citation and deploying the K-9 around the exterior of Bitzer's vehicle.

Ashbeck approached Bitzer's vehicle for the second time. Bitzer contends that Ashbeck returned Bitzer's driver's license and issued a citation for speeding, and then asked Bitzer to step out of the vehicle. Bitzer complied with Ashbeck's request, left his vehicle, and stood between his car and the police squad car. Ashbeck asked Bitzer to clarify where he was coming from, and Bitzer replied that they were camping. Ashbeck then informed Bitzer that he was the canine officer for Wabeno, and that he would be deploying the K-9. He also asked Bitzer if he had any guns, bombs, or narcotics in the vehicle. Bitzer admitted that he had some marijuana in the vehicle and described

where it was located. It is undisputed that once Bitzer exited his vehicle, the entire exchange lasted one minute or less.

Based on Bitzer's admission that there was marijuana in the vehicle, Ashbeck placed Bitzer in handcuffs and put him in the back of the squad car. He also asked Krahn to exit the vehicle and placed him in the squad car as well. Ashbeck then deployed the police dog around the exterior of Bitzer's vehicle. The dog alerted twice, and Ashbeck immediately searched the vehicle and located marijuana where the dog alerted and where Bitzer had said it would be. Bitzer was placed under arrest and transported to Forest County Jail. Krahn was released and permitted to drive Bitzer's car away from the scene. The entire length of the traffic stop, from when Ashbeck pulled Bitzer over until the moment Bitzer admitted he had marijuana in his vehicle, was less than 20 minutes.

## LEGAL STANDARD

A motion for summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). A "genuine" issue of material fact requires specific and sufficient evidence that, if believed by a jury, would actually support a verdict in the non-movant's favor. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has the burden of showing there are no facts to support the non-moving party's claim. *Celotex*, 477 U.S. at 322. In determining whether to grant a motion for summary judgment, the court should consider the evidence presented in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. When the record, taken as a whole, could not lead a rational jury to find for the non-moving

party, there is no genuine issue and therefore no reason to go to trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**ANALYSIS**

Bitzer contends that Ashbeck unreasonably detained him beyond the time necessary to issue a traffic citation. "A detention following a traffic stop, like any seizure, must satisfy the Fourth Amendment's requirement of reasonableness." *United States v. McBride*, 635 F.3d 879, 882 (7th Cir. 2011) (citing *Illinois v. Caballes*, 543 U.S. 405, 407 (2005); *United States v. Taylor*, 596 F.3d 373, 376 (7th Cir. 2010)). It is undisputed here that the initial traffic stop for a speeding violation was a lawful seizure supported by probable cause. But, even where lawful at its inception, a "seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Caballes*, 543 U.S. at 407.

However, courts have recognized several permissible grounds for lawfully prolonging a traffic stop beyond the time necessary to effectuate its original purpose. *United States v. Bueno*, 703 F.3d 1053, 1060 (7th Cir. 2013). In particular, "information lawfully obtained during a traffic stop may 'provide the officer with reasonable suspicion of criminal conduct that will justify prolonging the stop to permit a reasonable investigation.'" *Id.* at 1062 (quoting *United States v. Martin*, 422 F.3d 597, 602 (7th Cir. 2005) (citations omitted)). Whether independent reasonable suspicion arose to justify an officer's continued investigation is an objective inquiry into all of the circumstances known to the officer at the time of the detention. *United States v. Snow*, 656 F.3d 498, 500 (7th Cir. 2011). This "'totality of the circumstances' test necessarily includes the experience of the law

enforcement agent and the behavior and characteristics of the subject." *United States v. Zambrana*, 428 F.3d 670, 675 (7th Cir. 2005).

The facts relevant to determining whether the circumstances that transpired during the traffic stop gave rise to reasonable suspicion justifying continued detention are largely in dispute. Therefore, summary judgment cannot be granted in favor of either party on this basis. Defendants cite several circumstances that they argue constituted independent reasonable suspicion sufficient to allow Ashbeck to continue to detain Bitzer even after issuing the traffic citation. Ashbeck alleged that he observed several unusual behaviors from the occupants of the vehicle. Ashbeck observed Bitzer and Krahn making assertive movements within the vehicle. He also stated that Bitzer acted unusually nervous and Krahn strangely would not look at him as he asked Bitzer questions. Likewise, Defendants argue that Bitzer's vague answers to questions, the packed state of the vehicle, and Bitzer's prior drug charges further provided Ashbeck with reason to believe criminal activity might be afoot. In addition, at the time of the traffic stop, Ashbeck knew that there was an ongoing investigation into drug trafficking and manufacturing in the Chequamegon-Nicolet National Forest surrounding Wabeno, and there was a known marijuana grow site about six miles from the location of the traffic stop. Ashbeck stated that he was also aware that there had been several recent break-ins in the Wabeno area at the time.

Viewing Ashbeck's version of events objectively, the facts could support a finding that Ashbeck had reasonable suspicion that the vehicle's occupants were involved in wrongdoing such that further detention was permissible. *See Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir. 2008) ("Reasonable suspicion is more than a hunch but less than probable cause and 'considerably less than preponderance of the evidence.'") (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)).

However, Bitzer has presented evidence rebutting each of Ashbeck's observations. As a result, there is a genuine dispute of material fact, and summary judgment is inappropriate on this theory.

But even where no independent reasonable suspicion arises to justify a continued seizure, where a traffic stop is based on probable cause, an officer may still prolong the stop beyond the time necessary to effectuate its original purpose so long as the length of the detention is reasonable. "[T]he prolongation of a traffic stop based on probable cause due to further questioning by a police officer is reasonable so long as the officer asks '[q]uestions that hold potential for detecting crime, yet create little or no inconvenience.'" *Bueno*, 703 F.3d at 1061 (quoting *United States v. Childs*, 277 F.3d 947, 954 (7th Cir. 2002) (en banc)); *Arizona v. Johnson*, 555 U.S. 323, 333 (2009) ("An officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop."). Traffic stops based on probable cause are not subject to the scope and duration limitations of *Terry v. Ohio*, 392 U.S. 1, 20 (1968), and the Fourth Amendment "does not require the release of a person arrested on probable cause at the earliest moment that can be accomplished." *Childs*, 277 F.3d at 953-54. Courts employ a fact-bound, context-specific inquiry to determine what is a "reasonable" prolongation of a traffic stop. *Id.*

Generally, courts have found that a traffic stop is reasonably prolonged where a person is detained for a few minutes at most, and is not "inconvenienced in any appreciable way." *Bueno*, 703 F.3d at 1061 (collecting cases); *United States v. Richardson*, 700 F. Supp. 2d 1040, 1047 (N.D. Ind. 2010) (holding the use of a police dog to conduct a sniff did not unreasonably extend the duration of a lawful traffic stop where the dog already was at the scene, where there was at most a two minute delay beyond the traffic stop, and where that delay was justified by the officer's observation of the vehicle's occupants acting nervous and fidgety and looking back at the police car

while the officer ran a license check). Courts look to the length of time that passes between the completion of the purpose of the stop and the reasonable suspicion warranting further detention. *Bueno*, 703 F.3d at 1061-62.

Here, the facts impacting the analysis of whether the prolongation of the traffic stop was reasonable are not in dispute. Ashbeck spent most of his time performing routine police work such as obtaining information about the vehicle and its occupants, relaying information to dispatch, and preparing the speeding ticket. It is undisputed that no more than two minutes elapsed between the time Ashbeck returned to Bitzer's car after having informed dispatch that he was going to conduct a canine sniff and when Bitzer admitted that he had marijuana in the car (thus giving rise to reasonable suspicion to investigate further). It is also undisputed that the questions Ashbeck asked after Bitzer exited the vehicle were directed to detecting crime. Ashbeck informed Bitzer that he would be deploying his canine, and asked if Bitzer had any drugs or weapons in his vehicle. Moreover, it is not in dispute that this additional questioning lasted no more than one minute.

Bitzer argues that Ashbeck's request that he exit the vehicle after the ticket was issued was unreasonable regardless of how long the ensuing questioning lasted. But where the initial traffic stop is based on probable cause, the stop can be extended in duration beyond the original purpose so long as the detention does not "measurably" extend the stop or cause "appreciable" inconvenience. *Bueno*, 703 F.3d at 1061; *Childs*, 277 F.3d at 953 ("[N]either the driver nor [the passenger] had a right to be released the instant the steps to check license, registration, and outstanding warrants, and to write a ticket, had been completed."). Ordering a driver to exit the vehicle does not violate the Fourth Amendment's proscription of unreasonable searches and seizures, as it is considered a *de minimis* intrusion and is reasonable in light of the need to secure officer safety. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977). Likewise, Ashbeck did not need

reasonable suspicion in order to justify a canine sniff of an automobile in connection with a legitimate traffic stop, and it was thus reasonable for him to require Bitzer to exit his vehicle in connection with that sniff. *Caballes*, 543 U.S. at 407-10.

Thus, the key issue is whether the decision to conduct a canine sniff and the resulting additional questioning here unreasonably extended the duration of the stop given the facts and circumstances. While stepping out of the car to answer additional questions was certainly an inconvenience, one minute of additional questioning is well within the reasonable bounds allowed by this Circuit's precedent. *See, e.g.*, *United States v. Carpenter*, 406 F.3d 915, 916-17 (7th Cir. 2005) (finding a delay of five minutes to wait for a canine to arrive was a reasonable "modest incremental delay for a person already lawfully arrested"); *McBride*, 635 F.3d 879 (finding additional questioning that extended a traffic stop by two minutes was not unreasonable and did not convert a lawful stop into an unlawful one).

A consideration of the context in which Ashbeck was operating further supports the reasonableness of the additional questioning. Here, the canine was on patrol with Ashbeck; there was no delay in waiting for the canine unit to arrive. In addition, Ashbeck had determined while in his squad car, and before issuing the ticket, that he would be deploying the canine. Yet, because he was alone, Ashbeck was required to multitask. Due to officer safety protocol, he needed to remove the occupants from the vehicle and secure them prior to conducting the canine sniff. Defendants point out that an officer acting alone will almost always take longer to complete tasks, particularly where there are multiple occupants in a vehicle; under such circumstances, a solo officer would run the risk of crossing the line into unreasonable detention any time he or she uses otherwise lawful discretion in asking questions or deploying a canine. Ashbeck did not delay in deciding to deploy the drug dog, and reasonably did not do so immediately upon stopping the car. Rather, he

made the determination only after learning about Bitzer's criminal history and after observing Bitzer and Krahn's unusual behaviors, odd answers to his initial questions, and assertive movements during his first approach to the vehicle. He then approached Bitzer's vehicle for the second time, at which time he promptly asked Bitzer to exit the vehicle. All of these facts further support the reasonableness of Ashbeck's conduct and the brief extension of the stop.

Bitzer argues that "[t]o allow any leeway for arbitrary detention after the issuance of the ticket would give the police license to legally harass citizens or to become careless in their questioning *before* the purpose of the stop is complete." (Pl.'s Reply Br. to Motion for Summ. Judg. 1-2, ECF No. 48 (emphasis in original).) He further argues that therefore, a bright-line rule is necessary to avoid "absurd" results. He argues that if police were allowed to continue a detention after issuing a ticket, officers would have the authority to stop that same individual days later and demand that he answer questions because the initial stop was supported by probable cause and the additional stop was for a short duration. However, this slippery slope finds no support in the law. Rather, courts have repeatedly held that the focus is on the reasonableness of the prolongation of the stop. *Childs*, 277 F.3d at 954 ("What the Constitution requires is that the entire process remain reasonable."); *United States v. Muriel*, 418 F.3d 720, 725 (7th Cir. 2005) (same); *Richardson*, 700 F. Supp. 2d at 1048 ("[O]n a probable cause stop, no bright-line rule makes any detention after the issuance of a ticket unreasonable.") (citing *United States v. Johnson*, No. 07-30078, 2008 WL 187559, at *5 (C.D. Ill. Jan. 18, 2008)); *accord. United States v. Sharpe*, 470 U.S. 675, 685 (1985) (holding, in the context of a *Terry* stop, that "[m]uch as a 'bright line' rule would be desirable, in evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria"). In the hypothetical Bitzer suggests, there is no question that an officer would act unreasonably and unlawfully in stopping a person days after

issuing a ticket. *Sharpe*, 470 U.S. at 685 ("Obviously, if an investigative stop continues indefinitely, at some point it can no longer be justified as an investigative stop.").

In sum, the facts of this case fall squarely within the bounds of permissible conduct under the Fourth Amendment. Ashbeck reasonably prolonged the traffic stop by detaining Bitzer for an extra minute or two at the most after issuing a speeding citation. Even drawing all inferences in Bitzer's favor, he cannot prevail on his claim that Ashbeck violated his rights under the Fourth Amendment because the entirety of the stop was reasonable. Therefore, summary judgment in Defendant's favor is appropriate. As a result, it is not necessary to address Defendants' additional arguments that Ashbeck is entitled to qualified immunity and that Plaintiff's claim for punitive damages should be dismissed.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for summary judgment is **DENIED**. Defendant's motion for summary judgment is **GRANTED** and the case **DISMISSED**.

Dated this __13th__ day of March, 2013.

        s/ William C. Griesbach
        William C. Griesbach, Chief Judge
        United States District Court